Next case we're going to hear today is Minter v. Wells Fargo, and Mr. Smith, whenever you're ready, we'll hear from you. May it please the Court, I think it might be helpful to begin with just a couple of comments about the RESPA statute in Section A, which is the primary focus of our briefs. And I'm going to harken back, if I might, to pages 8 to 12 of our opening brief. And those make the point essentially that this is a consumer protection statute, that Congress made the judgment in 1974, after conducting months of hearings over a period of several years, that referral agreements were dangerous for consumers and were dangerous for the market for settlement services as a whole, even if consumers couldn't prove financial injury in individual cases. And as a result, the legislature imposed legally enforceable limits on industry behavior. And then they came back in 1981 and 1982, they conducted more hearings, and they reached the conclusion that it wasn't just limited to financial injury for the market as a whole for consumers, but that it also had non-economic effects, that it caused referral advice to be distorted, all of the things that you might expect from that. And that's where we are on Section 8A. And in this case, for trial purposes, this RESPA case at the defendant's insistence was split in two. The first was going to be plaintiff's sham entity case under Section 8C of RESPA. The second was going to be the question of what we contend was a $3.5 million kickback, which was paid to Long and Foster in 1993 for referrals. Now, as it turned out, that first trial not only decided the 8C or the sham entity case, but it also tried an essential element of our kickback or Section 8A claim. And as a result of that partial trial in Section 8A, and again, at the defendant's insistence, the court entered judgment against the plaintiffs on both of those claims. The problem as we see it is that the jury's verdict on that common issue, the question of referral, was irrational. Now, maybe that irrational outcome was the result of the defendant's naked appeal to prejudice against plaintiff's lawyers in closing. Maybe it was the result of the admission of evidence that the trial court had already held, already ruled out as being unfairly prejudicial or misleading. But regardless of the reason, the plaintiffs seek today the limited relief of a new trial on that single issue, which would allow them to present their kickback claim for decision. And if I might, I'd like to start, and I'm sure the panel has questions that they forecast, I'd like to start with a review of the trial evidence on the question of referral. Because when I say the jury verdict was irrational, I mean exactly that. Not that it was lopsided, not that they scored some points and we scored more points, but simply that it was not disputed that the class representatives, so that's Mr. and Mrs. Allborough and Ms. Minter, and this is a class action tried through them, the class representatives were referred to Prosperity Mortgage for Loans by Long & Foster. Of course, that was the plaintiff's testimony without impeachment or cross-examination. The Long & Foster agent for the Allboroughs testified to the same effect. So did Ms. Minter's prosperity loan officer. And then what we see as probably the most important fact is that all three of them, and in fact every single Long & Foster customer, received a document authored by Long & Foster and prepared in compliance with RESPA. It's actually required by Section 2607C4 of the statute. Are you saying the issue of referral should not have been submitted to the jury? We can't say that, Your Honor, because we did not move under Rule 50. What we can say is that we're entitled to a new trial on it under Rice v. Community Health Systems. I'm just trying to understand it because I think you initially asked for that instruction. Was that after the evidence? Did you ask for an instructional referral after the evidence, all this overwhelming evidence? Did you ask for that? Your Honor, what the district court did was on April 24th, which was a week or two before trial, it required the parties to submit instructions and verdict forms. Okay? Is this after the evidence? No, Your Honor, that's beforehand. And then in the middle of trial, there was continued discussion about the form of the verdict, about the form of the instructions. But when you get to that point, you've submitted a special verdict form, and so then the question is, okay, how do you take that back? And I think we make it clear, and I don't think the defendants seriously disagree. In fact, can you ask the court to take it back? Yeah. I understand. When you sit and discuss the instructions with the court at the end of the trial, you say this is no longer applicable or this is applicable? Your Honor, I don't disagree with you. Was there a charge conference? There was a charging conference. Did the conference occur after the evidence? It did occur after the evidence. And, Your Honor, frankly, it simply never occurred to us that the jury would reach an irrational decision. You submitted it to them. Your Honor, I understand that, but that brings me back to Rice v. Community Health Systems, okay, where this court held, frankly, in accordance with virtually all of the other circuits, that if you don't file a Rule 50 motion, which is the only way to take this back,  Rice holds, consistent with everybody else, that the thing you lose if you don't do that is the power to get judgment entered in your favor. But you don't lose your right to challenge, under Rule 59, an irrational verdict. And we're very much like one of the parties in the case that we cite to you called Greenleaf v. Garlox, which is a case decided, I think, in the Ninth Circuit. And I think it's at 170. Basically, you can get a new trial, but you can't get judgment. That's exactly right. That's the price we pay, Your Honor, and that's a totally fair price. And I'm with you on that, except I'm having some difficulty understanding this business of not objecting. I understand, you know, it's all there, it's coming up, and you asked for it. And I just don't understand the objecting part. It seems to me, I don't know if you'd call it an invited error, but it looks like to me you asked for it. Your Honor, I understand the court's question, and I can simply say that none of the cases categorize the failure to file a Rule 50 motion, which is the only thing that was available to us, as a form of invited error. And, in fact, we're very much like the plaintiff in a case that we cite that's called Greenleaf v. Garlox, at 174 F. 3rd at page 365, where the court, despite a verdict. It wouldn't be error at all. Pardon me? It would be a forfeiture of a position. In other words, it's not necessarily error to submit that to the jury. It would be the fact that you requested it, and then withhold it, didn't withdraw it, and basically forfeited any objection to having the court submit it, or any argument to persuade. The court may have submitted it anyway, despite your argument. But it seems to me that you can't complain under the rules, Rule 50, for the court having submitted it in this case, right? We're not complaining under Rule 50, right? We understand that we can't get judgment entered in our favor. But we are like the appealing party, one of the parties in Greenleaf v. Garlox, where the court said at 174 F. 3rd at 365, they said, given the state of record at the closing, the plaintiffs had every reason to believe that the jury, if it understood and rationally applied the jury instructions, would decide in their favor. The thing that we lose is the ability to have judgment entered in our favor. But there aren't cases out there that say, because they would be contrary to Rice, v. Community Health Systems, that say you lose more than that. When you don't follow your Rule 50 motion, the thing you lose is the ability to have judgment entered in your favor. And consistent with Rice, there's no other way to read it. That's our position on that. So you think the jury's going to rule for you, so you don't take it away from them, expecting them to rule in your favor, expecting an appellate review standard to be deferential to that jury finding. And not having done that, you're arguing that you don't lose your new trial right and hope to apply a different standard of review that's more de novo, less deferential? Your Honor, so the question of the standard review, I think, is a very important one. And let me say a couple of things about that. First of all, the usual reason that there's great deference given on a Rule 59 motion is because the trial court was there and gets to weigh the evidence and exercise discretion. If you take a close look at the decision here, there's no weighing of evidence, and the only exercise of discretion is to say, you didn't move under Rule 50 and, therefore, I am denying your new trial motion. Now, that's a legal error. You can't say that consistently with Rice v. Community Health Systems. And if you take a close look further in Rice at page 287, Rice says that when the reason that the new trial was denied is legal error, as opposed to simply a difference in how you weigh the evidence, that the standard review is de novo in that situation. So we think we meet the standard under any situation because we think the judicial admission that was made here by Mr. Varon, we think the undisputed evidence about referral, all of those add up. Even under the highest standard, under cases like Bristol v. Bethlehem, we meet that standard. Actually, I don't agree in reading this record that there's uncontroverted evidence on this referral. I think it's a complex question, especially in view of the court's instructions to the jury. There was a lot of evidence that while prosperity was made known to the borrower, they'd made their own decisions and did their own investigation and made decisions independent of that. And that could be construed by the jury, especially in light of judge's instruction, as not being referred by the broker, but they're making their own decisions. And they looked at several companies. They went to LendingTree, and then the court described it, and the whole thing was explained in the notion as to whether they were a broker or a lender. And they ended up deciding that prosperity, they selected prosperity as a lender in that competition. And so I think the jury instruction can be rationalized. You do have that statement made by attorney in the closing argument, and you rely on that heavily. But that doesn't make the jury's verdict irrational. Let me say one thing about that in terms of the admission. So with respect to that point, the jury was instructed consistent with RESPA. The definition of referral is in the regulations. It's in Section 12, Section CFR 1024.14F1, more or less. And what it says is it has to be an affirmative influence. It doesn't say it has to be the only reason. It doesn't say it has to be the sole reason. So the fact that other influences came to bear does not make it not a referral. But there were instructions, specific instructions given by the court on this, and I don't think you've objected to any of the instructions, have you? No, we're not objecting to the instructions, but consistent with those instructions. And if you take a look at the form of referral, which is in the addendum in pages 12 to 13, that's a long and foster document prepared to comply with RESPA, which is itself the referral. Which is itself the referral. And it's a long and foster document, and there's no other way to read that other than it is compliant with RESPA, it complies with Section 2607C4, and it affects the referral all by itself. But let me turn to the question of attorney admission. Before you do that, was the instruction given by the court consistent with the instruction you requested? On the definition of referral? I think we may have asked for a little more than that, but it was not terribly inconsistent. And we don't challenge that instruction today. With respect to the admission, you know, the admission is what it is. The statement was there's no dispute that, and the one thing we agree with is that there was referral. That was an item for the jury to decide. And the statement was made at the end of all of the evidence. It was the first of three closing arguments by the defendant, none of whom, you know, signaled anything. The lawyer may have made a misstatement, but he was teeing up another issue. He was basically saying, I'm not talking about this, I'm not talking about this. He's teeing it up. And in context, to say that when he makes that kind of comment, to tee up another issue, is a judicial admission which is going to deny the jury of its opportunity to find facts. That's pretty dramatic. And nobody came to the court and said, ah, he confessed, we want a judgment. And you didn't say that to the court at that point, did you? We did not move for judgment after the closing argument. That is true. But you want us now on appeal to say that that judicial admission is binding and that you should get a new trial. If it's binding, you should get a judgment. Your Honor, under Rice, we're entitled to a new trial. But if you look at Childe and at Hall. You missed my question. Sorry. My question is, if you agree that you can't have a judgment because you didn't have a Rule 50 motion, but you can have a new trial. Yes, Your Honor. The judicial admission is not a question of sufficiency of the evidence. Your argument on the judicial admission is basically that they've admitted that issue away. Correct. And you're entitled to it as a matter of law, which falls under the Rule 50 parameter and can't be raised again. Your Honor, I don't see. It's not an evidentiary matter that considered. If it is, the jury didn't hear it. Your Honor, I disagree with that. Because if the jury's verdict is irrational in light of the admissions at trial, including the attorney admissions, a new trial is a perfectly appropriate remedy. Because it was against the evidence. Except there's other evidence going the other way. And there's instructions that go the other way. And it seems to me that all of that can be considered by the jury in rendering its verdict. You either get a sufficiency of the evidence argument under your procedural structure. Or you can argue, the most you can argue is that that's part of the evidence that the jury heard. Your Honor. You can't argue that that judicial admission goes further and gives you a new trial. I don't agree with that. And I'm not aware of any authority that says when there's an attorney admission or a judicial admission that it limits you only to Rule 50 relief. I'm not aware of any authority to that effect. No, I'm not suggesting you do. But I'm suggesting it has to be taken that way. Because otherwise, the only thing you can legitimately argue is that the verdict was not supported by the evidence. And that this statement by the attorney is part of the evidence that the jury considered. And if you say it's part of the evidence, you then have to still take into account all the rest of it. I disagree with that for the reason that I've just stated. If I can spend just one moment talking about the evidentiary issue and the closing argument issues. Not to argue so much that these are, although they would justify a new trial on that basis, but to point out that these help to explain why the jury reached the irrational verdict that it did. The error here, we think, was plain because the trial court went back on its grant of the motions in Lemonade because it permitted over-the-top closing argument. And if you look at this court's- You were pressing the witnesses about calling this a bamboozle, that you were bamboozled, you were puzzled. So on cross-examination of that very witness, the cross-examination says, when you closed that loan, did you feel bamboozled? No. Did you feel it was all fair? Yes. Well, what prompted you to come to the conclusion it was bamboozled? I got a letter from an attorney. Did you solicit that letter? No. And it goes on and on and develops the fact that your firm solicited the client and pointed out that they were bamboozled. Now, when the lawyer gets a closing argument and says they really weren't affected, that's not over-the-top. That's the evidence presented to the jury. I understand the court's position. And our position on that is simply that there's a dividing line, or there's supposed to be, between attacking the plaintiff's case, attacking the plaintiffs, and attacking the attorneys who brought them in and saying what was said in the closing argument here. But our point is simply this. If you look at that or at the evidence about economic injury, that evidence had been ruled out flatly by the trial court. Unless there's a door open. Which the trial court expressly ruled had not been open. And so after conducting the 403 balancing before trial and finding in our favor, the trial court reversed itself without doing that 403 balancing, let that evidence in. Everyone knew that it was critical evidence. Everyone knew that it was flatly forbidden by multiple courts of appeal ruling on the rest of the statute, and yet let it back in. And so when we look at this irrational verdict on referral, you have to try and ask. Isn't that relevant? By the way, I see I'm over. I'm asking you a question. Yes. Isn't that relevant to whether the borrowers were bamboozled or misled or deceived, or whatever the words you used? It goes not to just their damage. It goes to their reaction to this loan, whether they were mistreated, whether there was misrepresentations, deception, and all of that you tried to bring out. And it seems to me at that point when they come back and say, you know, we weren't really hurt. We were satisfied. We got the loan we paid for. The fees were fine. And then the correspondence with the attorneys comes out. I don't quite follow why it isn't relevant to all that. Your Honor, that is exactly the argument that the defendant made to the trial court, and that is exactly the argument which he rejected, okay, which he rejected. And if you look at the examination of the plaintiffs, for example, Mr. Albrose said, I feel I was cheated because no one told me that Wells Fargo was pulling all the strings here. And he later testified, not in an economic or not in a monetary sense, but I feel that I was lied to. I was cheated for that reason. That was the evidence in front of the district court. It exercised its discretion. It said the door wasn't opened, and yet it permitted that evidence to come in, and then it became the centerpiece of closing argument, and then you get the result that we got. When you come back, speak to the Binks issue too. Happy to do it, Your Honor. Thank you. Mr. Jay? Thank you, Your Honor. I'm William Jay on behalf of all the defendants in this case. I'd like to begin with a point that Mr. Smith made about the price that they paid, that the plaintiffs paid by not filing a Rule 50 motion. It's more than just not being able to get a judgment in their favor. This Court's decisions in Bristol Steel and in Nichols make clear that you pay a steeper price than that by not filing a new trial motion. You don't get to substitute through the avenue of a Rule 59 motion, the avenue for searching review of the sufficiency of the evidence that you would get under Rule 50. You just don't get to do that. And if you look at the Rice case that Mr. Smith cited a half dozen times, you will see that Rule 59 is not a free pass. It's not a way of bringing up errors that you've already forfeited. In fact, in the Rice case itself, there was a jury instruction issue. The party had not objected to that jury instruction. They couldn't get a new trial on that jury instruction by raising this in a post-judgment Rule 59 motion because that was forfeited. Here we have not just a forfeiture but a waiver. As the Court's colloquy with Mr. Smith has brought out, the plaintiffs proposed Question 3. They had ample opportunity to change Question 3, and Judge Wynn, I'd like to spell out a little bit more detail on the timing. Not only was there a charging conference, the Court proposed the verdict form after much but not all the evidence was in. The parties filed their proposed changes to that verdict form. They also objected to various aspects of the jury instructions, but the plaintiffs filed no objection to this. And then the final objections to the verdict form came in on the mornings of closing. After closing, that afternoon and again the next morning, we have more wrangling between the parties about changes that need to be made to the jury instructions in light of contentions that were made during the closing. There were two written filings. There was two colloquies before the district judge. The plaintiffs never said a word about the need to take this from the jury. If they had wanted to, there are two aspects. If you look at Joint Appendix 1735 and 1739, two aspects of the plaintiff's case where the judge instructed the jury. I've determined that these are uncontested or uncontroverted, or words to that effect, and so you need not look at that. So that's whether the mortgages in question are federally related and whether the affiliated business arrangement in question meets certain aspects of the federal definition. The judge says you don't need to consider that. Plaintiffs could have asked for that kind of instruction. They could have made any number of proposed changes to the interrogatory. They did nothing. They waited to see what the jury would do. That's a pretty strong statement you made on the argument, though. You said, I think the only thing I agree for sure is that Long and Foster did refer the name plaintiffs to prosperity. There's no dispute about that. That's pretty strong stuff. Well, Your Honor. There's no dispute about that and the issue is getting ready to go to the jury? Your Honor, I think you need to look at the paragraph, two paragraphs before, the paragraph after, as this court cautioned. I would like to look at the context of it, but I tell you what, even standing alone or however you look at it, that's pretty strong stuff there. There's no dispute about that. That's sort of added language there. I'm just saying it's pretty strong and I do see potentially, I'm not understanding why there was no objection or you indicated no statement to have the court to go ahead and direct the verdict on that particular issue in light of that statement. Because it looks like you were primed to say, I agree. It just didn't happen. But I don't, I mean, that's a pretty strong statement. I'd like to address the statement, but let me pick up on your second point as well, which is that nothing was said. Nothing was said when, after all, this is one group of defendants' lawyer. Two other groups of defendants are going to stand up and close separately. Nothing was said at a time when those defendants could have said, wait a minute, we don't agree with that. As the Sixth Circuit said in the Harrison case, it is important to pay attention to the, not just the context, but to the opportunity to explain and qualify. If you bring it up, if the other side brings it up and says, this is a judicial admission, then the lawyers, and here the lawyers for the other parties would have an opportunity to explain and qualify, explain whether they agree with it, make any qualifications that are necessary. There was no statement, and so the district court, applying its discretion, reasonably concluded that it occurred to no one at the trial that this was a judicial admission. But let's talk about the statement. Did the other side argue after this? Did they bring this back up? It looked like to me it was a nice thing to come back and say, well, that issue is off the table. Was that done in the argument? There was a rebuttal closing. There was no mention made of the statement. I don't believe so. But the statement itself, you have to assess it in context, as this court said in the Fraternal Order of Police case, when reviewing judicial admissions. And the context sensitivity is exactly why it is, as far as I can tell, I've found no case. What's the context? All right. So the context is Mr. Varon is talking to the jury about their need to use their own recollection of what the testimony had been, not just to go on what Mr. Gordon, in his opening closing for the plaintiffs, had said. He said, it is your job to weigh what happened here. I have a lot of differences, and differences of recollection, differences in what was said. He then makes the statement that we're talking about here. Now, Mr. Gordon had said in his opening, at page 36, he had recollected back to the plaintiff's testimony about their being referred. Now, the meaning of the word referred is a point that I want to come back to in a minute, because as Judge Niemeyer has alluded to, there's a specialized meaning under RESPA, and there's the way that people talk in ordinary English. They're not the same, and this is very important for this point. But so Mr. Varon is saying, okay, I agree with that. There's no dispute about that. But a lot of the other things, then he begins talking about Mr. Fitzgibbon, who was the plaintiff's expert. I don't quite recall Mr. Fitzgibbon's testimony coming off as Mr. Gordon described. And he's off on to Mr. Fitzgibbon. So this is not a judicial admission. It occurred to no one at the trial that it was a judicial admission. It's not raised until 13 days later, after the jury has come back with its verdict. We think that that's ample basis for the judge's decision not to treat this as a judicial admission. That's a discretionary judgment that this court reviews deferentially under the law. There's no abuse of discretion here. Let me pass for a second on to the economic injury point that Mr. Smith brought up toward the very end. The most important point I can make about the economic injury point is that there was a clear instruction to the jury that is almost verbatim the same as the plaintiff's proposed jury instruction that says you don't have to consider whether there was an overcharge or other economic injury to the plaintiffs. That appears in the joint appendix at 1733. Mr. Smith's reply brief doesn't address that instruction at all. Mr. Smith, I understand he didn't have a lot of time to address it this morning. He hasn't said why the jury should be presumed not to have followed that clear instruction. What in fact happened on economic injury, there is an expert that the defense had proposed, Dr. Corshane. The judge wouldn't let her testify. He stuck to that ruling throughout the trial. That testimony was the basis of the Rule 403 discussion. That's clear if you look at the motion limiting decision which is in the addendum to the plaintiff's blue brief. That decision is what he says has so little probative value it would be outweighed by the danger of delay or confusing the jury or potentially other things. However, that doesn't mean that this point, that the four questions that were asked, one to Ms. Minter, one to Mr. Alborough, one to Joe Rogers, one to the plaintiff, doesn't mean that those four questions were out of bounds and certainly doesn't mean that the judge had ever said that they were so prejudicial that they violated Rule 403. The judge himself explained this on the record at, I believe, page 1592 where he said that's not the same, sorry, 1590, where he says that's not the same thing as letting Dr. Corshane testify. That is the ruling that he stuck to when the defendants asked him to let her testify on the grounds of opening the door. He said, no, they haven't opened the door to that and he wouldn't allow her to testify. He stuck to that ruling. But it's a significant point that Mr. Alborough testified not just that he felt taken and cheated. You come back to page 95 of the transcript of his testimony. The question is taken and cheated on the price and he says yes. So it is that that allowed this to come in. Only after it came in, this question about whether he got a good deal, only after that line of questioning did the colloquy that Mr. Smith alluded to come in. That didn't close the door. It didn't establish that he wasn't talking about economic injury. In fact, he had made this statement about taken and cheated on the price. Let me come back to the definition of referral under RESPA. I think this is very important, not just for the judicial admission argument, but the whole point about why this jury's verdict is entirely consistent with the evidence. It's entitled to the most deferential review by this court and it certainly passes the standard set out in Bristol Steel. Is there any evidence to support the jury's verdict irrespective of its sufficiency? The RESPA definition is in the jury instructions at 1734 to 1735. It says that to show a referral, that's not just a recommendation. If I say to you, I recommend that you try this settlement service provider, it's not a referral. Two things have to happen. It has to have the effect of affirmatively influencing a person's choice of a settlement service provider and they've got to pay for the settlement service. The plaintiffs have repeatedly asserted that, and Mr. Smith said it again this morning, that the piece of paper, the affiliated business arrangement disclosure, that that constitutes and memorializes the disclosure. That's not right. We can see that that's not right from the RESPA statute itself. The RESPA statute itself says that that disclosure has to come at or before the time of referral. That's in Section 8C4 of RESPA. If it constitutes the referral, it could never come before the time of referral. The reason that we have this somewhat confusing situation is the use of the word referral in ordinary English, the kind of ordinary English that we use on a consumer disclosure. But the jury was told, in connection with the question they were answering, that referral meant to the RESPA referral, which had to have not only the effect but had to be paid for. The evidence was that these persons went out and made their own decision on it and they were quite proud of that fact. That's absolutely right. All of the name plaintiffs shopped around. This was brought out extensively during their testimony that Mr. Albro, in particular, got information from at least 15 lenders through LendingTree.com. He provided information to more than one of them. In fact, he'd gotten from his Long and Foster agent referrals not just to Prosperity but also to Bank of America. There's ample evidence in the record concluding that even one of the named plaintiffs was not referred would be enough because the interrogatory asks, were the named plaintiffs, plural, referred by Long and Foster? The Albros, in addition, there's evidence in the record that they got a $5,000 credit against their closing costs and the amount of fees paid to Prosperity, $777. The jury can conclude that the credit is enough to establish they didn't pay for their settlement service. Now, the disclosure form, it does say, we are referring you. But this is the ordinary English versus rest of the English point that I've come back to, that we are referring you language prescribed by the government. It's what you have to qualify for a safe. You're confusing the matter because you're using referring in the evidence and in the record and the documents. The issue before the court is whether the jury verdict of referral was rational. And the court, in giving them that question, explained the rest of the definition explicitly in the instruction. And said, you must apply this definition. It doesn't. So the jury is instructed and we presume they follow that instruction. They're instructed to look for those elements in deciding whether there was a referral. That's exactly right. I don't understand why you're going and talking about all these other English referrals. I simply want to respond to the idea that here's the document. Mr. Smith has said, here's the document. This was the referral. It wasn't the referral. I'll move on from that. So the only other point that I want to make sure and talk about is the point about the closing. Judge Niemeyer, I think you brought out in the colloquy with Mr. Smith, that the point that these plaintiffs were perfectly happy with their loans was until they got a letter from counsel. That was the subject of extensive testimony, cross-examination, both Ms. Minter and Mr. Albrough. Counsel's entitled to refer to that evidence. So at most, all we're talking about is the phrase, follow the money. Now, if you look at the context of the closing arguments in this case, Mr. Gordon, in his opening closing for the plaintiffs, used that phrase nine times. Mr. Varon, next closing, six times. Mr. Permit, next closing, three times. So Mr. Bourgeois, the last person to stand up on the defense side to close, he uses that phrase. He's just tying into a phrase that's been used all morning or all day. But the point that he's making is one that's supported by the evidence, and I think that there's certainly no effect on the question that the They say they want a new trial only on question three, referral. So in order to show prejudice from one of these evidentiary errors, trial errors, or other matters that are within the court's discretion, they've got to show not only that the court abused its discretion, but that there was a prejudicial impact on the jury's answer to the question whether Long and Foster referred, within the meaning of RESPA, the plaintiffs to prosperity. I think, unless the court has further questions. Speak on that Binks issue, the issue as to whether the court properly dismissed those claims. Your Honor, first point about Ms. Binks' claims, that she had two, under Section 8A, Section 8C4. If her claims are still live, then her 8C4 claim is live, too. It's not been disposed of, and this court doesn't have appellate jurisdiction over the case. Now, we don't think that's the case. We think that what happened was Judge Nickerson said, okay, we've had a trial, what happens now? Tell me what happens now on the 8A claims, for example. And the plaintiffs and the defense submitted a joint letter, but with different positions about what should happen then. No mention of Ms. Binks. And then the plaintiffs proceed to file their new trial motion in which they acknowledge that the jury's verdict binds the named plaintiffs in their attempt to pursue their Section 8A claims. But the judgment does, because the judgment says named plaintiff. I'm not sure the verdict does, because she wasn't even in the courtroom. I mean, it wasn't up to her. She was not a member of the class that went to trial. There is no doubt about that. In that instance, but once the judge entered that judgment, not only folks in the courtroom, but they had this named plaintiff. But no one said anything. Right, no one said anything, Your Honor, particularly when there was ample opportunity. The judges said, what do I do now? What should happen now? And I submit that if, because Ms. Binks does have an 8A claim. You guys keep talking about 8A and 8C, and I don't read the statute. It's a kickback claim, if you like, Your Honor. Except 8C is nothing more than articulation of what 8A says. We entirely agree with that, Your Honor. If that were before the court. It's very confusing. Yes. It sounded to me like it was basically abandoning myself, with the Binks claim. Her claims were beyond the statute of limitations, and the only way she gets back in is if somebody initiates a hearing of some kind on polling. There's no dispute. Because she was the representative of the tolling class. The only way that she could pursue these RESPA claims is if she gets the benefit of equitable tolling. She didn't show the necessary diligence. No, they didn't even pursue it after that. As the judge pointed out from your questions, the judge just entered a verdict. Nobody objected. I mean, a judgment. It closed out everything. And if somebody said, oh, we still have this to do, it seems to me they could have raised it. They could have raised it. I think that's absolutely right. It's a little messy, though, isn't it? Well, I think if the judge had done it summarily, without giving everyone the opportunity to opine about what should happen next, or perhaps if she were separately represented and her separate counsel had no opportunity to speak, maybe that would be messier. But here, if there were a written opinion rejecting her claims and saying that they're untimely and he's granting judgment on that basis, that certainly would be neater. But I think that there's certainly no abuse of discretion in closing out the case, as Judge Nickerson did. And ultimately, whether the standard here is invited error or plain error or just a very heightened abuse of discretion review under Bristol Steele, the plaintiffs have a very high hill to climb. We submit that they have not climbed it. Do we have to answer that Bink's question? You have to answer the Bink. Is that really before us? I mean, at this point, if she hasn't done anything, until she does something to determine if she, in fact, is part of this other group? I think, respectfully, Your Honor, I would submit that that might be a question for Mr. Smith because while they've raised it on appeal in their blue brief, we responded in our red brief, there's not a word about it in their reply, and I don't know whether they're still pressing it. But we submit that if you do address it, that the judge has discretion to deem those claims, both the 8A claim and the other claim, abandoned, and that's why we have a final judgment here. Thank you, Mr. J. Thank you, Your Honor. Mr. Smith? Let me address Bink's first in response to your questions. The first is that the way the district court dealt with us was to tell the parties that her claim with others had been severed from the case, and that's at Joint Appendix Page 1269. It's Administrative Order No. 5 in the case stating that those claims have been severed. The second point is, in terms of the statute of limitations, that that's an interesting argument, but it's one for the district court to make in the first instance and not for this court to, in effect, enter summary judgment or hear a summary judgment motion that hasn't been ventilated at all in the district court. Do we have to answer this question? I mean, until it comes up. Sounds like to me that's when you'll make your next move, and then it will come up as to that. Well, I think it's important if the district court is going to get the correct road map for a problem. You didn't name her. You didn't say anything about it in the judgment. Just use this term. I understand that, but we took the appeal on that basis. Do you have an answer you might not want? No, Your Honor. Look, whatever the district court does, it does. We took an appeal because her claim had been adjudicated in a way that didn't make any sense to us, and we appealed immediately upon the entry of judgment on that. On August 28th, that was the order. But your position before us is that her claim has been adjudicated, not that it's out there not attended to. On its face, it says it has been adjudicated because she had an individual 8A claim. That's what that order says, and so we can't unring that bell. If it's an 8A claim and that was resolved, the 8A claims in that case, the tolling issue becomes moot. But she was not part of the timely class. She was part of the tolling class, so she couldn't have had her claim adjudicated in the trial that took place last year. Okay? With respect to the question on Rule 50 and what happens next, I want to suggest that— Let me just go back to that one second. Could we construe the severance for trial of just the tolling issue and not the 8A issue? As long as there's a clear instruction of the district court so that— No, no, no. I'm talking about the record. When the judge said, we're not going to do binks now. We're going to try that another time. Yes. Was the court referring to the whole case or was the court referring just to the tolling evidence? In other words, she still had in common with everybody else the 8A claim. Yes. She didn't have in common the tolling issue, which would be moot facts. Correct. Now, if the 8A is resolved against everybody, the court could well have thought that now I've resolved everybody, the tolling class is no longer—it's moot. The tolling class was not part of the adjudication in the trial held last year. It was only about the timely class, so it couldn't have bound her. But it depends on what the scope of that severance was. If it was just on the tolling issue—if I were the district judge, I would say we're going to trial all 8A claims. Then I would say, with respect to binks and the people in her class, if you win on the 8AA, we're going to have a separate hearing on tolling to find out whether they can get the benefit of the 8A ruling. But since the 8A ruling was lost, it becomes moot. It doesn't matter whether it's tolling. But the only reason that 8A was lost was because of the effect of question number 3 on the timely class. I understand. I'm just saying right now we have a judgment which purports to adjudicate her claim. We don't think that that's proper for the reasons that I've stated. Let me say just a couple of things about Rule 50. The first point is I think you have to come back to Rice, because Rice says very clearly what the price you pay is, and the price you pay is that you can't get judgment entered in your favor. The standard of review can be higher if you look at cases like Bristol, but in cases like Bristol, there was a weighing of the evidence, there was an exercise of discretion, and there was a need for a new trial altogether. In this case, all you have to do is go on to the second case, the kickback case, that everybody intended to be tried separately, and that's why the analysis under Rule 59 we believe should be different here. With respect to the question about whether this attorney admission comes in, I hear Mr. Jay say that there has to be an objection. Why didn't we raise the issue? But if you look at this court's decision in Meyer v. Berkshire, you don't have to raise it. It's self-executing unless it's ambiguous, unless it's ambiguous. And that's a case like Harrison where it happened at the beginning of the trial, and it wasn't clear. Here it happens at the end of the trial, and we submit that it's very clear what was intended, which was to admit the obvious in front of the jury in order to move on to other issues. Was the admission by one lawyer binding on all the rest of them? Well, first of all, only Long and Foster could have affected a referral. So when Mr. Varon admitted it, he's the only person who had skin in that game. The second thing is he's the first of the three defendants who closed. There wasn't a peep out of the other two. And the reason is that just as he appeared here for all of the defendants, they divided up the closing. They each addressed different issues. They each had different things to say. His job was to talk about RESPA. He spoke to that issue. Then the next one talked about prosperity, and then the last one talked about the plaintiffs and made the attack on plaintiffs' counsel, which we've discussed before. So in that sense, it plainly binds all three of them. On the question of referral, and I see my time is up. If I can have 10 seconds to address that. You've got it. Okay. The form that is at pages 12 to 13 of the addendum is a form that is required by RESPA, as Mr. Jay said, and it's required by RESPA because they have to document when the referral happens. This is a Long and Foster form. Long and Foster handed it out to everybody who came through their doors. That was the testimony at trial. And it doesn't matter who handed it out, whether it was an employee or an independent contractor, if you left them in a bin at the door. It's something that RESPA requires to document the fact that a referral has occurred. And even though you might have shopped around, and even though you might have compared prices, the burden under RESPA is simply to show that there was an oral or a written act which had the effect of affirmatively influencing the choice. That's the definition of referral that's in the regulations at 12 CFR 1240. Consistent with that definition and consistent with the RESPA instruction the jury was given on referral, we submit that a rational jury could not have found otherwise because you have something that is intended to define exactly what the jury is deciding, whether there is a referral under RESPA. Thank you very much. We'll adjourn court for the day until tomorrow morning and then come down and address Greek Council.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Robert J. Conrad, Jr.